**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| VALCRUM, LLC,<br>a Texas Limited Liability Corporation,<br><br>Valcrum<br><br>v.<br><br>DEXTER AXLE COMPANY, LLC,<br>a Delaware Limited Liability Corporation<br><br>Defendant. | Case No. 3:24-cv-00190-DRL-SJF |

**DEXTER AXLE'S RESPONSE OPPOSING VALCRUM'S MOTION TO SEAL AND MOTION TO COMPEL PRODUCTION**

## I. INTRODUCTION

Valcrum's Motion to Compel is without merit and untimely. Valcrum seeks to compel production of Dexter employees' Microsoft Teams chats, regardless of whether certain messages in the chats are responsive to their discovery requests, and despite Dexter having already produced its responsive Teams messages over one year ago.

In keeping with the applicable law and usual practices, Dexter conducted a thorough search of its electronically stored information in early 2025. That search led to the production of responsive electronic documents, including Teams messages, belonging to custodians with knowledge of the issues underlying this litigation. These electronic documents were produced in the manner they were kept in the usual course of business, as is permitted by Federal Rule of Civil Procedure 34. Valcrum had Dexter's 35,000+ document production, including those messages, for months without claiming any sort of deficiency with the production. When Valcrum finally got around to serving a request for additional document production requesting additional Teams messages, Dexter had its e-discovery vendor, at its own expense, arrange the previously produced responsive Teams messages and

additional messages into threads to make them more reader-friendly. This "arranging" was done as a courtesy, not because Dexter's document production was deficient. The bottom line is that Dexter employed a thorough and accepted-under-the-law methodology for searching for and producing responsive documents in this litigation and Valcrum's complaints at this late stage demonstrate at best an unfamiliarity with electronic document production or at worst, an intent to disrupt or delay this litigation going forward.

## II. FACTUAL BACKGROUND REGARDING VALCRUM'S DISCOVERY REQUESTS AND DEXTER'S DOCUMENT PRODUCTIONS

### Valcrum's First Set of Requests for Production (Nos. 1-92)

1. Valcrum served its First Set of Requests for Production on September 26, 2024, along with Interrogatories and Requests for Admission. (Dkt. 38-4).

2. On January 6, 2025, Dexter served its written responses to 24 Requests for Admission, 14 Interrogatories, and 92 Requests for Production. (*Id.*).

3. Between January 14, 2025 through April 7, 2025, Dexter produced **15,456 documents** by way of six rolling productions ("Vol. 1" – "Vol. 6").

4. By June 9, 2025, Dexter had completed its primary document production with production of an additional **20,730 documents** ("Vol. 7") and a privilege log ("Vol. 8").

5. Dexter's methodology for preparing its production was as follows:

   a. Retained an e-discovery vendor to assist with its collection;

   b. Identified 12 custodians likely to have relevant information regarding the subject of this dispute;

   c. Worked with the vendor to obtain copies of the custodians' electronic mailboxes and other documents, resulting in collection of 4,333,757 pieces of data across 94 PST files (a PST file is a data file used to store local copies of emails, messages, and other items within Microsoft software);

d. Worked with the vendor to generate a list of broad search terms relevant to this dispute and applied them to the larger document collection to generate a subset of documents to review. (Dkt. 38-21).[1]

e. Reviewed the subset of documents to remove non-responsive and potentially privileged documents from the production.

f. Produced each volume of product with document images, native versions of certain file types (e.g., .XLS and .XLSX files), OCR files for each document, and "load files" for loading the production into e-discovery review platforms.

6. Each of the document production sets were provided to Valcrum's counsel via email with a secure file download link. (*See, e.g.*, Dkt. 38-9, at 2). The documents in the downloadable link provided Valcrum with the documents as they were kept in the usual course of business.

7. The Teams messages, like Dexter's entire production, were produced in their original form as they are held in the ordinary course of business.

8. Teams 1:1 and group chat messages are stored as individual message items within each custodian's Exchange Online mailbox. (Dkt. 38-14, at 2-3). They do not contain subject lines or

[1] The search terms included: "Valcrum"
from-mail-domain:valcrum.com OR to-mail-domain:valcrum.com OR cc-maildomain:
valcrum.com OR bcc-mail-domain:valcrum.com
"Fortress"
("cap" w/5 ("hub" OR "bolt-on" OR "bolt on" OR "threaded" OR "oil" OR "grease" OR
"aluminum"))
"Leili"
"Marston"
"bhlawyers.net"
from-mail-domain:bhlawyers.net OR to-mail-domain:bhlawyers.net OR cc-maildomain:
bhlawyers.net OR bcc-mail-domain:bhlawyers.net
"L&T Technology Services" OR "L and T Technology Services"
from-mail-domain:ltts.com OR to-mail-domain:ltts.com OR cc-mail-domain:ltts.com
OR bcc-mail-domain:ltts.com
"Stemco"
"Hendrickson"
"Lippert"
from-mail-domain:lippert.com OR to-mail-domain:lippert.com OR cc-maildomain:
lippert.com OR bcc-mail-domain:lippert.com (Dkt. 37, Ex. 11, at 3).

conventional CC fields, and there is no single unified "thread object" stored in the system. Threading is a client-side display function. (*Id.*).

**Valcrum's Second Set of Requests for Production (Nos. 93-111)**

9. From April 2025 through October 2025, Valcrum did not communicate any objections or perceived deficiencies with Dexter's production.

10. Instead, the parties moved forward with discovery, including Valcrum's counsel setting depositions of Dexter representatives to begin in November 2025.

11. Prior to taking any depositions, and on October 31, 2025, Valcrum served its Second Requests for Production. (Dkt. 38-7). In Request for Production No. 110, Valcrum requested "the entirety of the conversations represented in the email threads or chains appearing in [42 specified bates numbers previously produced]." (*Id.*).

12. Each of the bates numbers identified in Request for Production No. 110 had been originally produced to Valcrum by March 14, 2025, seven months prior.

13. The responses to the Second Requests were due on December 1, 2025, with Valcrum having already noticed depositions for November. (*Id.*; Dkt. 38-14, at 2).

14. Valcrum went forward with Dexter representative depositions as planned in November and December 2025, despite the outstanding Second Requests.

15. In preparing for the November depositions, a Dexter witness located physical documents in her possession that were responsive to discovery requests. A supplemental document production was prepared and served on November 12, 2025, serving these documents ("Vol. 9").

16. A supplemental production of five spreadsheets regarding sales volume were produced on December 1, 2025 ("Vol. 10").

17. Valcrum's counsel questioned the deponents multiple times using the Teams messages from Dexter's production as exhibits. (Dkt. 38-14, at 2).

18. As reflected in the transcript from the Deposition of Mark Nave, counsel for the parties had discussion off the record during the depositions regarding the distinction between email messages and individual Teams chat messages.

> "As we discussed recently, I don't believe this is an e-mail, but an individual Teams chat message." (Nave Dep., 38:16-18).
>
> "We've discussed this, Counsel, off the record. When there's not a subject line, these are Teams messages, not an Outlook e-mail." (Nave. Dep., 50:18-20).

**Dexter's Supplemental Document Production**

19. Despite having no obligation under the law to do so, in response to Valcrum's Second Requests for Production, and as an additional accommodation to Valcrum, Dexter worked with its e-discovery vendor to have a visual representation of threads of Teams chats prepared that included the individual messages it previously produced. (Dkt. 38-14, at 1-2; Dkt. 38-7, at Response to Request No. 110; Dkt. 38-15-16, 38-19-20). These threads included every message sent between a particular set of participants in a single 24-hour period. After redacting information that was unrelated to the subject matter of the litigation, this supplemental production of 291 pages was made on January 10, 2026 ("Vol. 11").

20. Because, as described above, the threaded supplement was not the way that Teams messages are maintained in the usual course of business, it took over 3 days of e-discovery vendor time and cost over $4,000, resulting in the creation of over 54,000 threaded chats that needed to be searched to locate the specific responsive threads requested by Valcrum.

21. On March 23, 2026, Dexter served a supplemental document production of eight spreadsheets that were further information regarding sales and costing ("Vol. 12").

**Valcrum's Third Set of Requests for Production and Delay in Filing its Motion**

22. Per the Court's November 21, 2025, amended scheduling order, fact discovery was to be completed by January 30, 2026. The Court further ordered, "any future requests to modify these deadlines will not be considered favorably absent a showing of circumstances beyond the control of the parties and their inability to negotiate those circumstances in the exercise of due diligence." (Dkt. 34).

23. The scheduling order was further amended on January 28, 2026, with fact discovery to be completed by April 30, 2026. (Dkt. 36). The Court further ordered, "a prior order issued by this Court on November 21, 2026, warned that additional requests to modify the Rule 16(b) deadlines were unlikely to be considered favorably given the age of the case. [DE 34]. Consistent with the mandate of Fed. R. Civ. P. 1, the parties should anticipate that additional requests to modify the Rule 16(b) deadlines will not be granted absent a showing of extraordinary circumstances beyond their control." (Dkt. 36).

24. On February 6, 2026, Valcrum served a Third Set of Requests for Production (Nos. 112-115). (Dkt. 38-10). The Third Set of Requests sought the production of Teams threads for over 491 chat messages, and a wholesale production of the "entirety of each Teams chat previously produced at least in part in discovery …", with utter disregard for consideration of whether the threads would contain additional responsive messages, or confidential business communications that are not even relevant to this dispute. (*Id.*).

25. Each of the bates numbers identified by Valcrum in Requests for Production Nos. 112 and 113 of the Third Set of Requests had been in the possession of Valcrum since at least March 14, 2025.

26. On February 26, 2026, Valcrum served amended versions of its Requests for Production Nos. 112 and 113, along with a deficiency notice.

27. In a March 9, 2026, letter and response, Dexter objected to the Third Requests for the additional Teams chats because almost a year prior to issuance of the Third Requests for Production, Dexter had already produced the individual Teams messages responsive to Valcrum's original discovery requests dated September 26, 2024, and the requests were overly broad, unduly burdensome, vague, ambiguous, and seeking information not proportional to the needs of the case. (Dkt. 38-13, Exhibit 10; Dkt. 38-14, Exhibit 11).

28. Over a month later, on April 14, 2026, Valcrum filed its Motion to Compel.

## III. ARGUMENT

In all aspects, Dexter followed both the law and accepted methodology for electronic document search and production in this case. Dexter's electronic document production, including Teams messages, was substantively completed by June 9, 2025, with the Teams messages identified in Requests for Production 112 and 113 having been produced by March 14, 2025. Valcrum waited over seven months after this to raise its first request for supplementation of the Teams messages; and waited over a year after the production to file this Motion. The Third Requests for Production that are the subject of this Motion were served during the discovery window, but without time for this Court to resolve the discovery dispute prior to the close of discovery. As this Court stated in the original scheduling order, the last month of discovery is for "the purpose of concluding your work, not extending it." (Dkt. 16). The Court went on to state that a "motion to compel, or any such motions that may impact the schedule, [should be filed] well enough in advance of this deadline to permit any necessary briefing and time for the court to rule." (Dkt. 16). By filing its Motion 16 days prior to the close of discovery, Valcrum has failed to comply with this Court's directive.

In sum, Valcrum's Motion to Compel is wrong on the merits and untimely and should be denied in its entirety.

### A. Dexter Fully Complied with Applicable Law and Accepted Electronic Discovery Search Methodology in its Document Production.

Dexter took all steps required under applicable law to (1) conduct an appropriate search of its electronically stored information; and (2) produce responsive documents therefrom, including the Teams messages at issue here.

#### 1. Dexter's Electronic Discovery Approach Was Proper.

Courts require that parties take a reasonable approach to searching and producing electronic documents. The Federal Rules don't demand perfection; only that a party act reasonably in identifying and producing responsive ESI. *In re Biomet M2a Magnum Hip Implant Prods. Liab. Litig.*, No. 3:12-MD-2391, 2013 WL 1729682, at *2 (N.D. Ind. Apr. 18, 2013). Key word searches are universally recognized as a reasonable search method. Keyword searches, while imperfect, are a recognized and reasonable means of identifying potentially responsive documents. *See id.* Moreover, "[R]esponding parties are best situated to evaluate the procedures, methodologies, and techniques appropriate for preserving and producing their own electronically stored information." *Kleen Prods. LLC v. Packaging Corp. of Am.*, No. 10 C 5711, 2012 WL 4498465, at *5 (N.D. Ill. Sept. 28, 2012); *see also Livingston v. City of Chicago*, 16 CV 10156, 2020 WL 5253848, at *3 (N.D. Ill. Sept. 3, 2020) (holding the City's disclosure of its software and how it intended to validate the review results were sufficient to not require it use the plaintiff's alternative protocol).

Here, Dexter employed all of the appropriate steps to search and produce its electronic documents in keeping with the law. These steps included (1) retention of a knowledgeable e-discovery vendor; (2) collection of electronic mailboxes from custodians with knowledge of the issues underlying the litigation; (3) identification and employment of broad search terms to the collection; and (4) and efforts to validate the collection through a review process. By April 2025, Dexter had produced over 15,000 electronic documents *including Teams chat messages* resulting from that

search. The documents were produced as kept in the ordinary court of business and were served via a file download link sent by email to Valcrum's counsel. The contents of the production were fully searchable and loadable into an e-discovery review platform. Valcrum's counsel never questioned the format in which the documents were being produced and did not request any sort of revised load file format to meet their needs. While Valcrum claims that it had "limited information" available to it to identify Teams chats it wanted supplemented, it omits from the record that it had been in possession of these materials since March 2025 and did not request supplementation of it by way of additional Requests for Production until October 31, 2025. (Dkt. 38-1, p. 5).

Each of Dexter's steps here not only reflect typical standards for an electronic document production, but they are also in keeping with Northern District of Indiana and other Seventh Circuit case law.

**2. Dexter Produced its Electronic Documents, including Responsive Teams Messages, Properly and Timely.**

The Federal Rules of Civil Procedure provide "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i). When choosing the first option, "a responding party need not categorize the production or label and organize them to correspond to a specific request." *Alexander v. Abbott Labs., Inc.*, No. 12-CV-52, 2014 WL 12547165, at *2 (S.D. Ill. Aug. 8, 2014) (citing Fed. R. Civ. P. 34(b)(2)(E)(i)); *see also ExactLogix, Inc. v. JobProgress. LLC*, No. 18 CV 50213, 2020 WL 13220038, at *2 (N.D. Ill. Apr. 7, 2020) ("Mirror images or forensic copies of hard drives satisfy the usual course of business requirement of [Federal Rule 34].")

Valcrum appears to argue that the document production should have been in complete chronological order. (Dk. 38-1, p. 9). There is no such requirement in the rules and Valcrum cites to no such authority. Here, Dexter's document production, including Teams messages, were produced as they were kept in the usual course of business. Those not familiar with Teams messages in

electronic production may not understand their difference from emails initially. Teams 1:1 and group chat messages are stored as individual message items within each custodian's Exchange Online mailbox. (Dkt. 38-14, at 2-3). They do not contain subject lines or conventional CC fields, and there is no single unified "thread object" stored in the system. Threading is a client-side display function. (*Id.*).

Dexter actually went above and beyond to accommodate Valcrum when it raised its concerns regarding the Teams messages. Dexter, as a courtesy to Valcrum and its own expense, furnished supplemental visual thread renderings of the Teams messages. Valcrum claims it was prejudiced by when these threads were produced in Vol. 11 (Dkt. 38-1, p. 8), however it overlooks that it had not even requested this production until October 31, 2025, and that the depositions of Mark Nave, Eric Schuh, and Stacey Miller were all scheduled for the week of November 11, prior to when Dexter's responses to the Second Set of Requests for Production were due. Now, Valcrum appears to argue that because Dexter took additional steps to present the specified Teams messages in threaded form, Dexter thereby engaged in a corrective measure that concedes the prior productions were deficient. To the contrary, transitioning a production to a more accessible format—specifically at the requesting party's behest—is a logistical supplement, not a corrective admission. *See Excel Enters., LLC v. Winona PVD Coatings, LLC*, No. 3:16-cv-19, 2017 WL 655861, at *4 (N.D. Ind. Feb. 17, 2017). Contrary to Valcrum's claim to this Court, Dexter had not "incorrectly stated that the missing individual messages have been produced earlier in a different form." (Dkt. 38-1, p. 8). Notably, Valcrum cites to nothing for this representation. Rather, Dexter's position through the discovery process and now were that the *responsive* messages that were located during searching had been produced. Dexter made no claim that messages like "on the body" and "Oh, ok" had been produced.

Valcrum identifies a specific quote from Eric Schuh at page 15 of its memorandum and claims this statement "is nowhere to be found in Volumes 1-10, even though its message includes search

terms supposedly used by Dexter." (Dkt. 38-1, p. 15. This is outright false. The statement at issue, from Mr. Schuh to Mr. Lievore, was produced as DEXTER001974 in Vol. 4 on March 7, 2025. It was not disclosed for the first time in Vol. 11.

When it produced Vol. 11 to Valcrum, Dexter's counsel provided correspondence explaining that material that was not related to the litigation at hand had been redacted from the threads. These threads are between co-workers at a company and cover many areas of the business and personal relationships. This is not an "excuse" as claimed by Valcrum, but the truth. Valcrum and Dexter are competitors. The undersigned is unaware of any requirement to produce information to an opposing party that is related to other business activities and not the matter at hand.

Dexter took all steps required under applicable law to search for and produce responsive electronic information. The electronic documents were produced as they were kept, and the production was fully text-searchable and date-sortable for Valcrum's ease. It appears that Valcrum did not make use of the search function, at least for some time, as they did not follow up with Dexter regarding any concerns over the production for over six months.

### B. Valcrum's Third Requests for Production and Corresponding Motion to Compel Are Not Timely.

Valcrum's request for court intervention is fundamentally undermined by its own procedural delay. Dexter's electronic document production, including Teams messages, was largely complete by June 2025. Instead of objecting within a reasonable time after production, Valcrum waited until October 31, 2025, to issue the Second Set of Requests for Production, and did not issue its Third Set of Requests for Production until February 2026. Further, it was not until April 2026, over a year after Dexter produced the bulk of the Teams messages at issue here, and only 16 days prior to the close of discovery, that Valcrum filed this Motion to Compel. Valcrum claims in its memorandum that "Dexter dribbled out piecemeal discovery over more than a year and a half through twelve separate volumes

of document production, ending as recently as March 23, 2026." (Dkt. 38-1, at 3). This is a mischaracterization of the discovery process in this case as set forth above. Vols. 1-8 of Dexter's production were produced by June 2025. Since that time, a total of 107 additional records have been produced, 91 of which were the Teams threads prepared at the request of Valcrum. 13 other spreadsheets were produced in supplemental responses to the First Set of Requests for Production and in response to the Second Set of Requests for Production. This was not a "dribbling" document production.

Courts routinely deny attempts to extend discovery deadlines when faced with an impending cutoff. *See, e.g.*, *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996) (refusing to grant further extension for a response to a motion for summary judgment when the judge decided there would be no more extensions). Even accusations of opposing counsel's delay cannot excuse a party's failure to serve within the allotted window. *Evolutionary Level Above Hum. Found., Inc. v. Havel*, No. 3:22-CV-395, 2024 WL 835723, at *4 (N.D. Ind. Feb. 27, 2024) (denying discovery motion filed after deadline even when party accused other party of seeking to delay discovery). For example, in *Flint v. City of Belvidere*, the Seventh Circuit affirmed the denial of a motion to reopen discovery when a plaintiff waited nearly a year to alert the court to a known discovery issue. 791 F.3d 764, 768 (7th Cir. 2015).

Here, fact discovery was to be completed by April 30, 2026. Further, the Court stated in its November 21, 2025, scheduling order that "the parties should anticipate that any future requests to modify these Rule 16(b) deadlines will not be considered favorably absent a showing of circumstances beyond the control of the parties and their inability to negotiate those circumstance in the exercise of due diligence." (Dkt. 34, at 1). In granting the final amendment to the scheduling order on January 28, 2026, the Court specifically said that "additional requests to modify the Rule 16(b)

deadlines will not be granted absent a showing of extraordinary circumstances beyond [the parties'] control." (Dkt. 36).

Valcrum served its Third Requests for Production on February 6, 2026, a week after obtaining three more months of discovery. (Dkt. 38-10). Despite having Dexter's objections to the Third Requests for Production on March 9, 2026, Valcrum waited another five weeks to file is Motion to Compel just 16 days prior to the extended close of fact discovery.

To allow Valcrum to revive discovery now would be to reward nearly a year of inaction since the original Teams messages were provided to them, push back the Court's scheduling order deadlines, and render the Court's admonition in its scheduling order meaningless.

**C. 30(b)(6) Deposition**

Contemporaneous with its Second Set of Requests for Production, Valcrum served an initial 30(b)(6) deposition notice on October 31, 2025, with 11 topics identified. An updated Notice was served on December 15, 2025, with 14 topics. (Dkt. 38-6). Topics in the Notice were vague and included broad categories that are completely unbound in time. For example, "Dexter's corporate and department structure" is unbound in time, and reaches into unrelated departments and areas of Dexter, such as logistics or shipping. It further could be construed to relate to any parent or sibling organizations of Dexter. Another example is: "Any policies made or enforced by Dexter relating to the handling of Confidential Information." Confidential Information was not a defined term, and "any" is without any sort of boundary. Likewise, the topic "Use of Confidential Information by Dexter" is equally as vague. (Dkt. 38-6). The parties had discussed that there would be issues with identifying deponents for the topics, and finding availability for the deposition, particularly in light of the December holiday season and busy schedules of several likely deponents. On February 16, 2026, Dexter formalized its objections to the 30(b)(6) Notice in an email (Dkt. 38-11), which was later followed by a March 9, 2026, letter (Dkt. 38-14). Instead of engaging in any sort of good-faith

effort to revise the topics, Valcrum has simply forged ahead with original topics 1-11 and additional topics 12-14. For many of Dexter's objections, Valcrum has simply stated that each area "is specific enough." (Dkt. 38-12). As stated in its correspondence on this matter, Dexter remains willing to produce a 30(b)(6) deponent if the topics are sufficiently narrowed and specific.

### D. Fees Are Not Appropriate Here.

Valcrum purports to seek attorney's fees related to its Motion. Rule 37 provides for sanctions unless the non-disclosure was "substantially justified" or other circumstances make an award unjust. Fed. R. Civ. P. 37 (a)(3)(B)(iv), (5)(A)(ii)-(iii). There is simply no basis for sanctions here. As established above, Dexter complied with Rule 34, supplemented its initial production voluntarily as a courtesy to the Valcrum, and acted transparently throughout discovery. By contrast, Valcrum's own conduct weighs against sanctions in that it sat on the produced Teams messages for over a year and waited until discovery closed to request—and eventually seek to compel the production of—the entirety of Teams messages. Valcrum's request for fees, like its Motion to Compel, should be denied.

## IV. Valcrum's Motion to Seal the Motion to Compel and Exhibits Attached Thereto Is Inappropriate.

Valcrum has filed what amounts to a single page motion seeking to seal its Motion to Compel Production, Memorandum in Support of its Motion to Compel Discovery Production, and the attached exhibits. (Dkt. 37). In their motion, Valcrum acknowledges that good cause is required to seal portions of the record. (Dkt. 37, citing *Citizens First*). However, Valcrum's entire showing of "good cause" is the following two sentences:

> The documents subject to being filed under seal include Exhibits that are the subject of this Court's Protective Order (DE 32) and the discussion of portions of these protected Exhibits. The discussion of these protected Exhibits includes quotes therefrom.

(Dkt. 37, at 2). Valcrum has made no showing that an entire motion, entire brief, and 17 exhibits should all be sealed in their entirety. The Stipulated Protective Order entered in this case (Dkt. 32),

requires that a "public version excluding the Confidential or Highly Confidential material must also be filed, unless otherwise ordered by the Court." (Dkt. 32, ¶5). This is not an optional action, it is a requirement, and Valcrum has failed to meet it.

"The Seventh Circuit routinely discourages the sealing of entire pleadings and briefs." *In re Bank One Sec. Litig.*, 222 F.R.D. 582, 587 (N.D. Ill. 2004) (citing *Pepsico, Inc. v. Redmond*, 46 F.3d 29, 30 (7th Cir. 1995)). Highlighting the difference between protecting intellectual property and maintaining judicial transparency, courts in the Seventh Circuit have noted "holding trade secrets in confidence is one thing, holding entire judicial proceedings in confidence is quite another." *Id.* (quoting *Redmond*, 46 F.3d at 31). To establish "good cause" for sealing documents, a party cannot rely on "stereotyped and conclusory statements" but instead "must attempt to 'winnow out properly confidential information'" to justify the request. *Id.* at 588 (quoting *Gulf Oil Co. v. Bernard*, 452 U.S.C. 89, 102 (1981); then quoting *Plair v. E.J. Brach & Sons, Inc.*, No. 94 C 244, 1996 WL 67975, at *5 (N.D. Ill. Feb. 15, 1996)). Valcrum fails to come close to meeting this standard.

Valcrum has failed to specifically identify the information that should be protected, why it should be protected, or why redactions are inadequate to protect the information. Dexter agrees with Valcrum that there are documents or portions of document in the record that should be sealed, but Dexter does not believe that the Motion to Compel, Memorandum in Support, and all the exhibits thereto meet the standard for sealing under the law in their entirety.

The Motion to Compel itself (Dkt. 38) is a bare recitation of the sequence of some discovery events in this case and contains no reference to or quotations from any of the exhibits. It does not contain any confidential information and does not need to be sealed. The Memorandum in Support of the Motion to Compel (Dkt. 38-1) likewise does not need to be sealed in its entirety. There are small quotes from documents marked "confidential" at pages 8, 10, and 15 of Valcrum's memorandum, and there is general discussion around those exhibits age pages 8-10 and page 15. However, the

confidential portion of these pages can easily be redacted from a public-facing memorandum. It is beyond comprehension how general recitations of fact, argument, and reference to case law can rise to the level of good cause requiring that they be sealed from the public record.

Turning to the attachments to Valcrum's memorandum, Exhibits 1, 3, 4, 7, and 10 are all discovery requests and responses that do not contain confidential information and do not need to be sealed. Exhibits 2, 5, 6, 8, 9, 11, and 18 are correspondence between counsel regarding the discovery requests and responses. Again, these documents are not marked confidential on their face. Exhibits 12 and 15 are individual Teams messages as they were produced, and Exhibits 13, 16, and 17 are examples of the messages that were arranged into a visual thread in response to Request for Production No. 110. These documents are marked Confidential, and Dexter would agree they should be sealed. Exhibit 14 is an excerpt from the deposition of Eric Schuh, with testimony regarding documents that were marked Confidential, and Dexter would agree it should be sealed.

Because Valcrum has failed to meet the rigorous standard for overcoming the presumption of public access, Valcrum's Motion to Seal the entire Motion to Compel, Memorandum in Support, and exhibits should be denied, and Valcrum should be ordered to file both a public version of its submissions and a sealed version, with only the necessary confidential information identified above sealed.

## V. CONCLUSION

Dexter has not failed to comply with its discovery obligations. Rather, Valcrum has failed to timely request supplementation of discovery, has failed to understand the documents that it had, has misrepresented the state of discovery to this Court, has not identified any support for its proposition that Dexter must create additional documents for it, and has not shown any level of good faith to seal this entire filing. For the foregoing reasons, Valcrum's Motion to Seal and Motion to Compel Production (Dkt. 37, 38), should be denied in their entirety.

Dated: May 5, 2026

Respectfully submitted,

*/s/ Angela Kelver Hall*
Angela Kelver Hall (#26991-71)
FAEGRE DRINKER BIDDLE & REATH LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Angela.Hall@faegredrinker.com
Tel: (317) 237-0300
Fax: (317) 237-1000

G. Thomas Williams (MI-P53734)
*Pro hac vice*
MCGARRY BAIR PC
5355 Northland Dr. NE, Suite C - #226
Grand Rapids, MI 49525
gtw@mcgarrybair.com
Tel: (616) 742-3500
Fax: (616) 742-1010

***Attorneys for Defendant Dexter Axle Company, LLC***

**CERTIFICATE OF SERVICE**

I hereby certify that on May 5, 2026, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Angela Kelver Hall*
Angela Kelver Hall