**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

| | |
|---|---|
| VALCRUM, LLC,<br>a Texas Limited Liability Corporation,<br><br>Plaintiff<br><br>v.<br><br>DEXTER AXLE COMPANY, LLC,<br>a Delaware Limited Liability Corporation<br><br>Defendant. | Case No. 3:24-cv-00190-DRL-SJF |

**DEXTER AXLE'S RESPONSE OPPOSING VALCRUM'S MOTION TO PERMIT DISCLOSURE OF CONFIDENTIAL INFORMATION**

## I. INTRODUCTION

Valcrum, LLC's ("Valcrum") Motion to Permit Disclosure of Confidential Information (the "Motion") is without merit and untimely. (Dkt. 51). Valcrum asks the Court to strip the protections of the Protective Order entered on September 16, 2025 (Dkt. 32) from internal Microsoft Teams messages among Dexter Axle Company, LLC ("Dexter") employees, which Dexter produced in discovery and designated Confidential or Highly Confidential (the "Teams Messages"), so that Valcrum can repurpose them in a separate proceeding before the United States Patent and Trademark Office ("USPTO"). Having failed to obtain USPTO registration through four non-final rejections and a final refusal and recognizing the instant case is premised on an as-yet unregistered trademark application, Valcrum now seeks to use this Court's discovery process to fill evidentiary gaps it could not fill on its own. The Court should deny the Motion and enforce the Protective Order as written.

Valcrum's Motion should further be denied because it fails to follow the meet and confer requirement required by Northern District of Indiana Local Rule 37-1. While Valcrum did submit a "Certificate of Good Faith" document, it has again cited the Local Trial Rules. This Court has previously called Valcrum's attention to its erroneous citation and also reminded counsel that "the duty to meet and confer prior to bringing a motion to compel is not a perfunctory requirement …". (Dkt. 47, p. 6). Prior to filing this motion, Valcrum's counsel sent an email to Dexter's counsel at 1:19 pm on Tuesday, October 26, 2026, asking for a review of the confidentiality designations of certain documents. Outside of a passing reference that Valcrum wanted to resolve this before seeking the assistance of the Court, no mention was made of an intent to file a discovery or when such a motion would be filed. **Exhibit A.** Counsel asked if there was time to discuss this on "Tuesday or Wednesday." *Id.* Prior to receiving a response from Dexter, Valcrum filed this Motion and all the supporting documents under seal on Wednesday, October 28, 2026 at 3:46 p.m. Valcrum's October communication was not a good faith attempt to meet and confer and its motion can be denied. N.D. Ind. L.R. 37-1(b).[1]

Further, Valcrum has again filed an entire motion, brief, and supporting documents under seal instead of redacting only the necessary portions. It has made no showing that the entire filing warrants being maintained under seal. While Valcrum cites *In re Bank One Sec. Litig.*, 222 F.R.D. 582, 587 (N.D. Ill 2004) for the holding that sealing entire briefs is discouraged, it has done just that here. It has made no attempt to use appropriate redactions to permit public access to these proceedings.

## II. FACTUAL BACKGROUND REGARDING THE PROTECTIVE ORDER, DEXTER'S DOCUMENT PRODUCTIONS, AND VALCRUM'S REQUEST TO DISCLOSE THEM

[1] The only other communications regarding this issue were a single email from Valcrum in March and a response from Dexter the following day.

**A. The Protective Order**

On September 16, 2025, the Court entered the parties' Stipulated Protective Order, finding that "there is good cause to protect the confidential nature of certain information." Dkt. 32 at 9. Counsel for both Valcrum and Dexter negotiated and signed the Protective Order. *Id.* The Protective Order "does not authorize blanket confidentiality and requires that each designation meet the criteria under Rule 26(c)(1)." *Id.* ¶ 1. It defines two tiers of protected information. "Confidential" information includes non-public "[b]usiness operation, process, or technical information" and "[c]ommunications internally or with vendors, suppliers or customers that do not qualify as Highly Confidential." *Id.* ¶ 2(b). "Highly Confidential" information includes "proprietary business/technical strategies," "[p]roprietary technical research or product development," and "[c]onfidential marketing strategies or future product plans." *Id.* ¶ 2(c). Designations must be made in good faith "based on an objective standard." *Id.* ¶ 3(a).

The Protective Order provides that designated information "may only be used for purposes of this litigation." *Id.* ¶ 4(a). It limits the persons to whom Confidential and Highly Confidential information may be disclosed, *id.* ¶¶ 4(b)-(c), requires a party wishing to disclose designated information to anyone else to first seek the Producer's permission and, failing that, leave of Court, *id.* ¶ 4(e), and forbids disclosure to any person not authorized for access, *id.* ¶ 4(f). Designated material filed with the Court must be submitted under seal, *id.* ¶ 5; Recipients must return or destroy designated material within 30 days of the final termination of this litigation; and the Protective Order's obligations "survive the conclusion of this case," *id.* ¶¶ 7, 9. A Recipient disputing a designation must first "provide written notice specifying the disputed materials and proposed redesignation," and the parties must meet and confer within 14 days; until the Court resolves any dispute, "[d]esignations remain in effect." *Id.* ¶ 3(d).

**B. The Productions**

Relying on the Protective Order, Dexter produced documents marked as Confidential, Highly Confidential and without confidentiality markings. By June 9, 2025, it had produced VOLs 001-008, totaling 55,130 pages of records. Dkt. 41 at ¶¶ 19, 20. This is not a "slow dribble of documents." Pl.'s Br. at 3, **Exhibit B.** Dexter timely supplemented productions in November and December 2025 with additional materials located (VOLS 009-010). In response to a new set of requests for production Dexter then served a production of Microsoft Teams message threads (VOL 011) on January 10, 2026. Dexter initially produced the Volume 11 threads with portions unrelated to this litigation redacted and designated that redacted production Confidential. Dkt. 41 ¶ 19; Dkt. 48 at 5-6, 12.

Following a Motion to Compel, this Court ordered Dexter to produce additional Teams messages: complete threads responsive to RFPS 112 and 113 (produced at VOL 013, 14,342 pages), unredacted versions of previously produced Threads chats (produced at VOL 014, 763 pages), and all threads for the three days before and after the VOL 013 Threads (produced at VOL 015, 34,999 pages and VOL 016, 5,001 pages). Dkt. 47 at 15, 20. The threads were produced in full, without redactions, and designated as Highly Confidential – Attorneys' Eyes Only. Pl.'s Br. at 4. These volumes are internal Teams threads that discuss numerous matters outside the scope of this litigation, including financial, business-development, and personal matters, and Volumes 15 and 16 in particular necessarily include irrelevant information. Dkt. 41 at 6, 11; Dkt. 48 at 12; Pl.'s Br. at 2 n.1.

Of the six documents at issue, two—DEXTER055281 and DEXTER055338—are designated Confidential, and four—DEXTER062825, DEXTER069851, DEXTER069994, and DEXTER108640—are designated Highly Confidential – Attorneys' Eyes Only. Dkt. 48 at 5, 9-

10; Dkt. 41 at 16; Pl.'s Br. at 4. DEXTER055338 and DEXTER069994 are the same page of a single Teams thread; DEXTER055338 is the page as produced in Volume 11, and DEXTER069994 is the same page as re-produced in full in Volume 14.

**C. Valcrum's Requests**

When Valcrum filed this lawsuit on March 1, 2024, it had filed its trademark application a few months earlier on October 20, 2023, and it received its first rejection on December 14, 2023. The application has been refused multiple times (three times already by the time the parties stipulated to the Protective Order). Pl.'s Br. at 2; *Office Action* at 2, U.S. Trademark Application Serial No. 98233347 (Dec. 14, 2023); *Office Action* at 1-2, U.S. Trademark Application Serial No. 98233347 (Apr. 24, 2024); *Office Action* at 2, U.S. Trademark Application Serial No. 98233347 (May 16, 2025). Valcrum submitted dozens of declarations from its own customers attesting that the red bezel identifies Valcrum as the source; the USPTO found that evidence insufficient. *Office Action* at 2-3, U.S. Trademark Application Serial No. 98233347 (Apr. 24,2024). By January 1, 2026, the USPTO had issued its fourth non-final rejection of Valcrum's application. *Office Action* U.S. Trademark Application Serial No. 98233347 (Dec. 14, 2023); *Office Action* U.S. Trademark Application Serial No. 98233347 (Apr. 24, 2024); *Office Action* U.S. Trademark Application Serial No. 98233347 (May 16, 2025); *Office Action* at 2, U.S. Trademark Application Serial No. 98233347 (Jan. 1, 2026).

On March 3, 2026, Valcrum asked Dexter to consent to disclosure of two documents to the USPTO, stating that it would seek relief from the Court if Dexter did not respond by March 13. Pl.'s Br. at 3. Dexter declined on March 4, explaining that the documents were internal product-development communications covered by paragraphs 2(b)-(c) and 3(a)-(b) of the Protective Order. *Id.* Valcrum then did nothing regarding these documents for nearly eight

months. In the interim, it filed a response with the USPTO without Dexter's documents, received a fifth and final refusal from the Examining Attorney, and here, allowed discovery to close and expert reports to be prepared. Dkt. 47 at 21; Pl.'s Br. at 4. After it filed this Motion, Valcrum has now filed a new trademark application for its red bezel product design, while also leaving the original application pending on the supplemental register.

Eight months after it had initially reached out regarding two documents, on the afternoon of October 26, 2026, Valcrum raised the issue again with Dexter—expanding its request from two documents to six—and filed this Motion two days later. Pl.'s Br. at 4. As to at least DEXTER069994, Valcrum proposes to submit only a portion of the page, omitting surrounding text. Pl.'s Mot. ¶ 2; Pl's Br. at 2 n.1, 4.

## III. ARGUMENT

At every stage of this litigation, Dexter has honored both its discovery obligations and the terms of the Protective Order, producing the Teams Messages in full, as the Court ordered, and designating them in good faith under the Protective Order's express criteria. Valcrum, by contrast, now asks the Court to rewrite that bargain after the fact, and the Motion should be denied for five reasons.

First, the Protective Order resolves this dispute on its face: It provides that designated information "may only be used for purposes of this litigation," and a filing before the USPTO clearly falls outside this litigation. Dkt. 32 ¶ 4(a). Second, because the Protective Order permits modification only with Court approval, Valcrum bears the burden of showing good cause to alter an order the parties negotiated, the Court entered upon a finding of good cause, and Dexter relied on in producing its internal communications; Valcrum cannot carry that burden. Third, Valcrum has shown no legitimate need for the Teams Messages: internal communications among a

handful of Dexter employees do not establish how consumers perceive Valcrum's claimed product configuration in the marketplace, which is the question that matters before the USPTO. Fourth, Valcrum waited nearly eight months after Dexter declined its request, until after discovery closed and expert reports were prepared, to seek relief, and its Motion is an effort to use this Court's discovery to fill gaps in a USPTO record it cannot fill on its own. Finally, even if the Court were to reach the question, Dexter's designations are proper under the Protective Order's express terms, which extend confidential treatment to internal communications and proprietary product-development information.

### A. The Protective Order prohibits Valcrum's proposed use of Dexter's designated materials outside this litigation.

The Protective Order's use restriction is unambiguous: designated information "may only be used for purposes of this litigation." *Id.* ¶ 4(a). Absent written permission or court order, Confidential information may be disclosed only to outside counsel of record and their staff; one in-house counsel not involved in competitive decision-making; party officers and employees directly involved in the litigation whose access is reasonably required; former Producer personnel who authored the information; stenographers; videographers and litigation support services; retained experts and consultants who sign Appendix A; and the Court and its staff. *Id.* ¶ 4(b). Highly Confidential information is further restricted to solely outside counsel and their staff, litigation support services, qualifying experts and consultants, and the Court. *Id.* ¶ 4(c).

The Protective Order's remaining provisions confirm that designated material was never meant to leave this litigation. Production of designated material "shall not be deemed a publication" that would "void or make voidable whatever claim the Producer may have as to the proprietary and confidential nature" of the material. *Id.* ¶ 4(f). Designated material filed with this Court must be submitted under seal. *Id.* ¶ 5. Within 30 days of the final termination of this

litigation, Recipients must return or destroy all designated material, and the Protective Order's obligations "survive the conclusion of this case." *Id.* ¶¶ 7, 9. Valcrum now asks the Court to permit what these provisions forbid: placing Dexter's designated material in a USPTO record, outside this litigation and beyond the Protective Order's reach.

The materials Valcrum seeks to disclose fall squarely within these protections. "Confidential" information expressly includes non-public "[b]usiness operation, process, or technical information" and "[c]ommunications internally or with vendors, suppliers or customers that do not qualify as Highly Confidential." *Id.* ¶ 2(b). "Highly Confidential" information includes "proprietary business/technical strategies," "[p]roprietary technical research or product development," and "[c]onfidential marketing strategies or future product plans." *Id.* ¶ 2(c).

Of the six documents Valcrum seeks to submit to the USPTO, two—DEXTER055281 and DEXTER055338—are designated Confidential, and four—DEXTER062825, DEXTER069851, DEXTER069994[2], and DEXTER108640—are designated Highly Confidential – Attorneys' Eyes Only. The USPTO is not among the recipients authorized under paragraph 4(b) or 4(c), and Dexter has not consented to the disclosure. *See supra* Section II.C. The Protective Order Valcrum stipulated to therefore forecloses the use it now proposes. Dkt. 32 ¶¶ 4(a)-(c), (e)-(f).

### B. Valcrum bears the burden of showing good cause to modify a Protective Order the parties negotiated and relied on, and it cannot meet that burden.

A party seeking to modify a protective order bears the burden of demonstrating good cause for the modification. *Braun Corp. v. Vantage Mobility Int'l, LLC*, 265 F.R.D. 330, 332

[2] DEXTER055338 and DEXTER069994 are the same page of a single Microsoft Teams thread. Dexter initially produced the thread in Volume 11 with portions unrelated to this litigation redacted and designated that redacted production Confidential; the page Bates-numbered DEXTER055338 itself contained no redactions. After Valcrum objected to the redactions, Dexter re-produced the thread in full, without redactions, in Volume 14, where the same page bears the number DEXTER069994 and, consistent with the remainder of that unredacted production, is designated Highly Confidential – Attorneys' Eyes Only.

(N.D. Ind. 2009); *see also Murata Mfg. Co. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 179 (N.D. Ill. 2006). In this context, "good cause … implies changed circumstances or new situations." *Romary Assocs., Inc. v. Kibbi, LLC*, No. 1:10-cv-376, 2012 WL 32969, at *4 (N.D. Ind. Jan. 6, 2012) (quoting *Murata*, 234 F.R.D. at 180). In deciding whether to modify a protective order, courts look at "the nature of the protective order, foreseeability at the time of issuance of the modification requested, parties' reliance on the order, and whether good cause exists for the modification." *Braun*, 265 F.R.D. at 332 (quoting *SmartSignal Corp. v. Expert Microsystems, Inc.*, No. 02-C-7682, 2006 WL 1343647, at *2 (N.D. Ill. May 12, 2006)). Where, as here, the parties negotiated and stipulated to the order and the producing party relied on it, the movant's burden is heavier. *Id.*

Valcrum may invoke the Seventh Circuit's general policy favoring access to discovery by collateral litigants, but that policy does not fit this case. *See Jepson, Inc. v. Makita Elec. Works, Ltd.*, 3 F.3d 854, 858-59 (7th Cir. 1994). Valcrum is not a collateral litigant seeking to avoid duplicative discovery in parallel litigation; it is a party to this case seeking to carry its opponent's confidential discovery into an ex parte USPTO proceeding where no protective order applies. Indeed, courts have declined to modify protective orders to permit precisely that kind of use. *See Chi. Mercantile Exch., Inc. v. Tech. Rsch. Grp.*, 276 F.R.D. 2327, 240 (N.D. Ill. 2011) (denying modification of stipulated protective order to permit participation in USPTO reexamination proceeding). The collateral-litigant cases therefore do not lighten Valcrum's burden under the governing factors, each of which weighs against modification.

**1. The Protective Order is a negotiated, stipulated order that expressly limits use to this litigation.**

The first factor weighs heavily against modification. The Protective Order is not a blanket order imposed by the Court; it is a stipulated order that the parties negotiated, that counsel for

both Valcrum and Dexter signed, and that the Court entered only after finding "good cause to protect the confidential nature of certain information." Dkt. 32 at 9. As discussed above, its terms are specific, and they expressly limit use of designated information to this litigation. *See supra* Section A. Valcrum agreed to each of these terms, and courts are reluctant to modify a protective order the parties themselves negotiated. *See Chi. Mercantile Exch., Inc. v. Tech. Rsch.*, 276 F.R.D. 237, 240 (N.D. Ill. 2011). Valcrum cannot now ask the Court to rewrite those terms simply because they have become inconvenient to its separate USPTO strategy.

**2. Valcrum's request to use Dexter's materials before the USPTO was entirely foreseeable when Valcrum stipulated to the Protective Order.**

The second factor also weighs against modification. A stipulated protective order is "difficult to modify … especially where the proposed modification relates to a matter that was foreseeable when the parties' entered into the original protective order." *Braun*, 265 F.R.D. at 332. As this Court has explained, "a party's oversight in not negotiating a provision in a protective order considering a matter which should have been reasonably foreseeable at the time of the agreement has been held not to constitute good cause for relief from the protective order." *Romary*, 2012 WL 32969, at *4 (quoting *Murata*, 234 F.R.D. at 180); *see also id.* (denying modification where the movant's concern "was present at the start of this litigation" and "could have been negotiated at the outset").

Valcrum's desire to use discovery before the USPTO was not merely foreseeable; it was known. Valcrum was prosecuting its trademark when it filed this lawsuit, and the application had been refused multiple times when the parties stipulated to the Protective Order on September 16, 2025. Dkt. 32 at 9. Valcrum thus knew, when it agreed that designated information "may only be used for purposes of this litigation," that it was simultaneously pursuing registration of the very trade dress at issue here. *Id.* ¶ 4(a). Had Valcrum wanted the right to use Dexter's confidential

discovery in that proceeding, it could have negotiated for it. Parties know how to address USPTO proceedings in a protective order when they wish to. *See Chi. Mercantile*, 276 F.R.D. at 239 (protective order expressly extended to "any and all proceedings including … reexamination proceedings, before the United States Patent and Trademark Office"). Valcrum did not. Even where a parallel USPTO proceeding is "perhaps unexpected," it "certainly cannot be deemed to have been unforeseeable." *Id.* at 240. Here, it was neither.

### 3. Dexter relied on the Protective Order in producing tens of thousands of pages of internal communications.

The third factor likewise weighs against modification. Where a producing party has made its production under a protective order, the order becomes "part of the landscape of this case," and that reliance weighs against modification. *Murata*, 234 F.R.D. at 180; *see Romary*, 2012 WL 32969, at *3 (finding reliance where order had been in place ten months and producing party had "produced thousands of pages of documents in discovery," many designated Confidential); *Chi. Mercantile*, 276 F.R.D. at 240 (finding reliance where party and third parties "relied upon the Protective Order in conducting discovery").

Dexter's reliance here is substantial. The Protective Order has governed discovery for more than fourteen months. In reliance on its protections, Dexter produced more than 55,000 pages of internal Microsoft Teams communications, including complete message threads and the additional court-ordered threads spanning the three days before and after each previously produced thread. Pl.'s Br. at 4. Dexter initially produced certain threads with unrelated material redacted (VOL 011); when Valcrum objected, Dexter re-produced them in full (VOL 014) and produced additional documents (VOLS 013, 015, 016), relying on the Protective Order's Highly Confidential – Attorneys' Eyes Only tier to protect information unrelated to this litigation. Dexter would not have produced its unredacted internal communications without that protection.

To permit Valcrum "to conduct discovery under one set of rules and then have the court abrogate those rules after [it] has achieved [its] desired result would be to countenance discovery by ambush." *Romary*, 2012 WL 32969, at *3 (quoting *Jochims v. Isuzu Motors, Ltd.*, 145 F.R.D. 499, 503 (S.D. Iowa 1992)).

The timing of Valcrum's request compounds the prejudice: Valcrum waited until discovery had closed and expert reports had been prepared to seek to change the rules under which Dexter produced its documents. *See infra* Section D.

**4. Valcrum cannot show good cause because nothing has changed and it has no legitimate need.**

Finally, and "most significantly," Valcrum cannot establish good cause. *Chi. Mercantile*, 276 F.R.D. at 239 (quoting *Murata*, 234 F.R.D. at 179). "'Good cause' in this context implies changed circumstances or new situations; a continuing objection to the terms of an order does not constitute good cause to modify or withdraw a protective order." *Murata*, 234 F.R.D. at 180. In assessing good cause, courts "weigh [the movant's] need for modification against the other party's need for protection, and ought to factor in the availability of alternatives." *Id.*

Nothing has changed. Valcrum's difficulties at the USPTO predate both the Protective Order and its first request to Dexter: by January 1, 2026, the USPTO had issued its fourth non-final rejection of Valcrum's application, and Valcrum renewed its request only after receiving a final refusal on the same record. *See supra* Section II.C. Valcrum's renewed request is thus not a response to any new situation; it is "a mere continuing objection to the terms of an order—an insufficient reason to lift a protective order." *Murata*, 234 F.R.D. at 184; *see infra* Section D.

Nor can Valcrum show a need that outweighs Dexter's interest in protection. Inconvenience in a separate USPTO proceeding is not good cause to modify a protective order. *See Chi. Mercantile*, 276 F.R.D. at 240 (burden of retaining separate counsel for USPTO

proceeding did not establish good cause). And as explained below, Dexter's internal communications cannot supply what Valcrum's own evidence does not establish. *See infra* Section C. Because Valcrum has not shown changed circumstances or a legitimate need, this factor—and with it, the balance of all four—weighs decisively against modification.

### C. Valcrum has shown no legitimate need to use Dexter's internal communications before the USPTO.

Valcrum's Motion rests on a single, unsupported premise: that "evidence of intentional copying by a competitor is power[ful] evidence of the strength of a trademark and relevant to the USPTO's registration process." Pl's Br. at 3. Valcrum cites no cases in support of that proposition and mischaracterizes intentional copying's import in the trademark analysis. Acquired distinctiveness is assessed by weighing the evidence as a whole, including (1) association of the mark with a particular source by actual purchasers; (2) length, degree, and exclusivity of use; (3) amount and manner of advertising; (4) amount of sales and number of customers; (5) intentional copying; and (6) unsolicited media coverage. *Converse, Inc. v. Int'l Trade Comm'n*, 909 F.3d 1110, 1125 (Fed. Cir. 2018). "[N]o single factor is determinative." *In re Steelbuilding.com*, 415 F.3d 1293, 1300 (Fed. Cir. 2005). Valcrum has not explained why five internal Teams messages would alter that analysis. Nor could it.

#### 1. Internal messages show nothing about how consumers perceive Valcrum's claimed trade dress.

The core question in acquired distinctiveness is whether *consumers* associate the claimed design with a single source. A trademark acquires that meaning through use in the public marketplace. Internal communications among a handful of a competitor's employees say nothing about what the purchasing public perceives. Even if Dexter's employees had discussed Valcrum's product, those private discussions—never seen by any consumer—cannot show that consumers view a red bezel ring as identifying Valcrum. If Valcrum has evidence of marketplace

recognition, it is evidence Valcrum already possesses: its own advertising, sales, and customer relationships.

**2. Evidence of copying a product design is generally not probative of acquired distinctiveness.**

Valcrum's theory fails for an additional reason specific to the type of mark it claims. Valcrum seeks to register a product configuration: a hub cap with a red bezel ring. Pl.'s Br. at 2. For product designs, evidence of copying is generally not probative of acquired distinctiveness, because "[w]here the proposed mark is a product design, the copier may be attempting to exploit a desirable product feature, rather than seeking to confuse customers as to the source of the product." *In re Van Valkenburgh*, 97 U.S.P.Q.2d 1757, 1768 (T.T.A.B. 2011); *see* Trademark Manual of Examining Procedure ("TMEP") § 1212.06(e)(i). Thus, even assuming for purposes of this Motion that any of the identified messages reflected copying—which Dexter disputes—that would not establish the proposition for which Valcrum offers them: that consumers perceive the red bezel as identifying Valcrum. Valcrum's entire theory of relevance depends on the very inference that *Van Valkenburgh* and the TMEP reject.

**3. The commercial context forecloses the inference Valcrum seeks to draw.**

The circumstances surrounding the parties' relationship further undercut Valcrum's theory. Dexter's awareness of the Valcrum cap is no evidence of anything improper: Dexter *sold* the Valcrum cap, at Valcrum's request. Dkt. 8 at 2. Valcrum marketed its cap as an upgrade for Dexter axles, and Valcrum itself stated it "has reserved the black-e-coating caps with red anodized ring combination for Dexter Axle"—because those are Dexter's colors. **Exhibit C,** DEXTER002368. The competing Dexter product prominently bears Dexter's own name and logo across its face. Where a product configuration is consistently presented alongside prominent word marks, evidence of its use may show recognition of the words, not secondary meaning in

the configuration itself. *See In re Mogen David Wine Corp.*, 372 F.2d 539, 542 (C.C.P.A. 1967) (affirming refusal of registration where decanter bottle was never "promoted separate and apart from the word mark 'MOGEN DAVID'" and the "average purchaser [was] likely to recognize and identify applicant's wine by the written matter … rather than on the configuration of the rather prosaic bottle"). Dexter wanted its customers to recognize a Dexter cap on a Dexter axle—not a Valcrum cap. At a minimum, these facts make the inference Valcrum asks the USPTO to draw from Dexter's internal messages far less straightforward than its Motion suggests.

**4. The USPTO has already rejected Valcrum's own evidence for acquired distinctiveness.**

Valcrum has already tried to prove acquired distinctiveness with the evidence best suited to the task. It submitted dozens of declarations from its own customers attesting that the red bezel identifies Valcrum as the source. The USPTO found that evidence insufficient. There is no reason to believe that a handful of internal messages among a competitor's employees, none of whom is a purchaser of Valcrum's product, would succeed where Valcrum's own customers did not. *Cf. Mogen David*, 372 F.2d at 542 (approximately fifty customer affidavits insufficient to establish secondary meaning in product configuration).

**5. Valcrum proposes to present Dexter's communications in selectively excerpted form.**

Finally, Valcrum does not propose to submit the complete documents. As to at least DEXTER069994, Valcrum proposes to submit only a portion of the page, omitting surrounding text that supplies essential context for the excerpt it selected. That choice is telling. If the messages said what Valcrum claims, Valcrum would have no need to excise their context. And because USPTO prosecution is ex parte, Dexter would have no opportunity to correct Valcrum's characterization in that forum. The Court should not permit its discovery process to be used to

place a curated excerpt of Dexter's confidential communications before a tribunal in which Dexter has no voice.

### D. Valcrum's unexplained eight-month delay, and its effort to use this Court's discovery to fill gaps in its USPTO record, independently warrant denial.

Valcrum's unexplained delay strongly weighs against modification of the Protective Order. As set forth above, Dexter declined Valcrum's March 3, 2026 request the next day, and Valcrum then waited nearly eight months—through a final USPTO refusal, the close of discovery, and the preparation of expert reports—before renewing an expanded request on October 26, 2026, asking to discuss the matter on "Tuesday or Wednesday." Without yet receiving a response from Dexter, and without confirming whether ot not a response was forthcoming, Valcrum simply filed this Motion on Wednesday afternoon, October 28, and represented to this Court that it had "made efforts to confer." *See supra* Section II.C, Dkt. 52.

Courts routinely treat such inaction as evidence that the movant's asserted need is not genuine. In *Murata*, the court denied a motion to vacate a protective order where the movant waited more than a year after the purportedly changed circumstances arose, explaining that "[s]uch a period of inactivity indicates that the changes were simply not as significant as [the movant] now—belatedly—contends they were." 234 F.R.D. at 184. In *Romary*, this Court denied modification of a stipulated protective order sought "on the eve of the close of discovery and the due date for the Defendants' expert reports." 2012 WL 32969, at *3; *see also Taylor*, 2014 WL 805951, at *4 (denying protective order where movants "allowed months to pass" before acting). Valcrum's delay is longer than the delay in *Romary* and comes at an even later stage of this case. It is not Dexter's responsibility—or the Court's—to rescue Valcrum from a problem of its own making.

The timing also reveals the Motion's true purpose. Valcrum has been litigating against Dexter for nearly three years and has been unable to obtain registration through numerous rejections. It now seeks to go around this Court's Protective Order to fill evidentiary gaps it could not fill on its own. And nothing in Valcrum's proposal would confine Dexter's documents to its existing application: once placed in a USPTO record, they would be available for use in Valcrum's newly filed application and any other proceeding Valcrum chooses. Discovery in this case exists to resolve *this* case. Valcrum's attempt to repurpose it as a tool for building a separate administrative record is an independent reason to deny the Motion.

**E. In any event, Dexter's designations are proper under the Protective Order's express terms.**

Valcrum's Motion ultimately argues that the identified documents are not trade secrets and therefore should not be designated Confidential or Highly Confidential. That argument misreads the Protective Order. Trade secret status has never been the basis for Dexter's designations, and the Protective Order does not require it. Trade secrets are only one of several categories of Highly Confidential information, and the Confidential tier expressly covers internal communications. *See supra* Section A; Dkt. 32 ¶¶ 2(b)-(c). When Dexter declined Valcrum's request in March, it did not mention trade secrets at all; it relied on these definitions. *See supra* Section II.C.

Dexter's designations were made in good faith "based on an objective standard," as the Protective Order requires. Dkt. 32 ¶ 3(a). Volumes 13 through 16 consist of internal Teams threads that discuss numerous matters outside the scope of this litigation, including financial, business-development, and personal matters, and Volumes 15 and 16 contain court-ordered threads that necessarily include irrelevant information. Dexter turned to the Highly Confidential designation only after Valcrum objected to its redactions and it was required to produce

documents without redactions. *See supra* Section II.B. Valcrum cannot object to redactions and then object to the designations that replaced them.

Nor has Valcrum followed the Protective Order's procedure for challenging designations. A Recipient disputing a designation must first "provide written notice specifying the disputed materials and proposed redesignation," and the parties must meet and confer within 14 days; until the Court resolves any dispute, "[d]esignations remain in effect." Dkt. 32 ¶ 3(d). Valcrum never invoked that procedure. Its Motion is the first time Valcrum has raised any general objection to Dexter's designations. To the extent the Court considers the designations at all, the accompanying Declaration demonstrates the specific competitive and business harm the disclosure would cause.

## IV. CONCLUSION

The Protective Order Valcrum stipulated to provides that designated information "may only be used for purposes of this litigation." Dkt. 32 ¶ 4(a). Valcrum has not shown good cause to rewrite that bargain: its USPTO proceeding was known when it agreed to the use restriction, Dexter relied on the order in producing its internal communications, Dexter's messages cannot show how consumers perceive Valcrum's claimed trade dress, and Valcrum waited nearly eight months to seek relief. For the foregoing reasons, Dexter respectfully requests that the Court:

(1) DENY Valcrum's Motion to Permit Disclosure of Confidential Information in its entirety;

(2) ORDER that, consistent with paragraphs 4(a) and 4(f) of the Protective Order, Valcrum may not use or disclose DEXTER055281, DEXTER055338, DEXTER062825, DEXTER069851, DEXTER069994, DEXTER108640, or any other material designated

Confidential or Highly Confidential – Attorneys' Eyes Only in any proceeding before the United States Patent and Trademark Office or any other forum outside this litigation;

(3) MAINTAIN under seal the confidential materials identified in this Response; and

(4) GRANT Dexter all other relief the Court deems just and proper.

Dated: November 12, 2026

Respectfully submitted,

*/s/ Angela Kelver Hall*
Angela Kelver Hall (#26991-71)
FAEGRE DRINKER BIDDLE & REATH LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Angela.Hall@faegredrinker.com
Tel: (317) 237-0300
Fax: (317) 237-1000

G. Thomas Williams (MI-P53734)
*Pro hac vice*
MCGARRY BAIR PC
5355 Northland Dr. NE, Suite C - #226
Grand Rapids, MI 49525
gtw@mcgarrybair.com
Tel: (616) 742-3500
Fax: (616) 742-1010

***Attorneys for Defendant Dexter Axle Company, LLC***

**CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2026, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Angela Kelver Hall*
Angela Kelver Hall